**IN THE**
𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔊𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

**FOR THE FEDERAL CIRCUIT**

B/E AEROSPACE, INC.,

*Appellant*

*v.*

C&D ZODIAC, INC.,

*Cross-Appellant*

APPEAL FROM THE
UNITED STATES PATENT AND TRADEMARK OFFICE
IN IPR2014-00727, PATENT TRIAL AND APPEAL BOARD

**RESPONSE AND REPLY BRIEF OF APPELLANT
B/E AEROSPACE, INC.**

Morgan Chu
Andrei Iancu
Ellisen Turner
Michael Fleming
Benjamin Haber
**IRELL & MANELLA LLP**

1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 277-1010

*Attorneys for Appellant/Petitioner B/E Aerospace, Inc.*

Date: November 10, 2016

# CERTIFICATE OF INTEREST

Counsel for Appellant/Patent Owner B/E Aerospace, Inc. certifies the following:

1.     The full name of every party or amicus represented by us is:

B/E Aerospace, Inc.

2.     The names of all real parties in interest (if the party named in the caption is not the real party in interest) represented by us are:

N/A.

3.     All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus curiae represented by us are:

None.

4.     The names of all law firms and the partners or associates that have appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this court are:

From Irell & Manella LLP:

Morgan Chu, Andrei Iancu, Ellisen Turner, Michael Fleming, Benjamin Haber.

# TABLE OF CONTENTS

Page

B/E REPLY ................................................................................................. 1

I. INTRODUCTION ............................................................................. 1

II. ZODIAC SIDESTEPS THE KEY CLAIM CONSTRUCTION
ISSUES ............................................................................................. 3

    A. Zodiac Provides No Support For The Board To Construe
The Term "Not Flat" To Include A "Flat" Seat Shape ............... 3

        1. Zodiac Merely Repeats The Board's Erroneous
Conclusion That B/E "Reads Out" In A Vertical
Plane ................................................................................. 4

        2. Zodiac Advances An Untimely And Unsupported
New Claim Construction Theory ...................................... 8

    B. Zodiac Does Not Justify The Board Reading The Word
"Unit" Out Of The Claim Term "Enclosure Unit" ...................... 9

        1. Zodiac Continues To Read Out The Word "Unit" .......... 10

        2. Zodiac Incorrectly Argues That A "Single
Functional Space" Cannot Include Internal Sub-
Spaces .......................................................................... 12

    C. Zodiac Cannot Justify The Board's Decision Not To
Resolve A Fundamental Dispute On The Term "Lavatory
Stall Unit" ................................................................................. 13

III. THE BOARD'S OBVIOUSNESS CONCLUSION IS
UNSUPPORTED AND ZODIAC OFFERS NO
SUBSTANTIVE ARGUMENT IN RESPONSE ................................ 16

    A. The Board's "Motivation" Analysis Is Conclusory And
Results In The Manufacture Of Claim Limitations
Missing From The Single Reference At Issue ........................... 17

        1. The Board's "Motivation" Analysis Is Improper ............ 17

2. Neither Zodiac Nor The Board Address The Lack Of A "Reasonable Expectation Of Success" ................... 21

B. Zodiac Improperly Argues About The "Gist" Or "Point Of Novelty" In Its Opposition, But This Approach Has Been Rejected By This Court And The Supreme Court ........... 25

C. Zodiac Offers No Substantive Response Regarding Betts's Admittedly Flat Seatback ................................ 27

D. Zodiac Offers No Substantive Response Regarding Its Witness Admissions About Betts's Separate Enclosures .......... 29

E. Zodiac Points To Evidence That The Board Did Not Consider After B/E Moved To Strike It ...................... 30

F. Zodiac Misstates The Law And Facts On B/E's Substantial Objective Indicia Of Non-Obviousness ................. 32

IV. CONCLUSION ..................................................... 39


B/E RESPONSE TO ZODIAC'S CROSS APPEAL ................................... 41

I. PRELIMINARY STATEMENT REGARDING CROSS APPEAL ........................................................ 41

II. STATEMENT OF RELATED CASES ............................... 41

III. STATEMENT OF THE ISSUES ........................................ 42

IV. STATEMENT OF THE CASE ON CROSS APPEAL ...................... 42

V. SUMMARY OF THE ARGUMENT.................................... 43

VI. STANDARD OF REVIEW.............................................. 44

VII. ARGUMENT ............................................................. 45

A. The Board's Finding That The Orange Binder Is Not A Printed Publication Rests On Several Fact-Findings Entitled To Substantial Deference .............................. 45

10088375

B.     Zodiac Ignores The Substantial Evidence On Which The
       Board's Decision Rests, Including Admissions From
       Zodiac's Own Witnesses That Contradicted Their
       Declarations ................................................................................. 48

       1.     Zodiac's Alleged Evidence Was Insufficient .................. 48

       2.     The Orange Binder Has No Indicia Of Publication......... 53

C.     Each Of Zodiac's Alleged "Errors" Misses The Mark .............. 55

VIII.  CONCLUSION ON CROSS APPEAL................................................. 58

**All emphasis added and citations omitted in cited authority, except where otherwise indicated.**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Int'l Trade Comm'n,*
  725 F.3d 1356 (Fed. Cir. 2013) ............................................................32, 39

*Apple Inc. v. Samsung Elecs. Co.,*
  No. 2015-1171, 2016 WL 5864573 (Fed. Cir. Oct. 7, 2016)...............*passim*

*Application of Bayer,*
  586 F.2d 1357 (C.C.P.A. 1978)....................................................................47

*Arendi S.A.R.L. v. Apple Inc.,*
  832 F.3d 1355 (Fed. Cir. 2016) ............................................................*passim*

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
  365 U.S. 336 (1961) .....................................................................................26

*Belden Inc. v. Berk-Tek LLC,*
  805 F.3d 1064 (Fed. Cir. 2015) ...................................................................39

*Bell'o Int'l. Corp. v. Whalen Furniture Mfg, Inc.,*
  No. 2014-006677, 2014 WL 4925619 (Sept. 30, 2014)...............................52

*Chef Am., Inc. v. Lamb-Weston, Inc.,*
  358 F.3d 1371 (Fed. Cir. 2004) .....................................................................5

*Cordis Corp. v. Boston Scientific Corp.,*
  561 F.3d 1319 (Fed. Cir. 2009) .............................................................47, 54

*Crocs, Inc. v. ITC,*
  598 F.3d 1294 (Fed. Cir. 2010) ...................................................................36

*Cutsforth, Inc. v. Motivepower, Inc.,*
  643 F. App'x 1008 (Fed. Cir. 2016).......................................................14, 15

*Garmin Int'l, Inc. et al. Petitioner,*
  IPR2012-00001, 2013 WL 2023626 (P.T.A.B. Mar. 5, 2013).....................35

*Gen. Elec. Co. v. Int'l Trade Comm'n,*
685 F.3d 1034 (Fed. Cir. 2012) ...................................................11

*Gen. Elec. Co. v. Wilkins,*
750 F.3d 1324 (Fed. Cir. 2014) ...................................................57

*Gillette Co. v. S.C. Johnson & Son, Inc.,*
919 F.2d 720 (Fed. Cir. 1990) ....................................................27

*Graham v. John Deere Co. of Kansas City,*
383 U.S. 1 (1966)...............................................................25, 32

*Helmsderfer v. Bobrick Washroom Equip., Inc.,*
527 F.3d 1379 (Fed. Cir. 2008) ...................................................11

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.,*
222 F.3d 951 (Fed. Cir. 2000) ....................................................28

*Howmedica Osteonics Corp. v. Zimmer, Inc.,*
640 F. App'x 951 (Fed. Cir. 2016) .................................................8

*Intelligent Bio-System v. Illumina,*
821 F.3d 1359 (Fed. Cir. 2016) ...................................................22

*K/S Himpp v. Hear-Wear Techs., LLC,*
751 F.3d 1362 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 1439
(2015)............................................................................18

*K/S Himpp v. Hear-Wear Techs., LLC,*
751 F.3d 1362 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 1439
(2015).......................................................................18, 19

*KCJ Corp. v. Kinetic Concepts, Inc.,*
223 F.3d 1351 (Fed. Cir. 2000) .....................................................6

*In re Klopfenstein,*
380 F.3d 1345 (Fed. Cir. 2004) ...............................................54, 55

*In re LF Centennial Ltd.,*
*No.* 2015-1931, 2016 WL 3545686 (Fed. Cir. June 29, 2016)...................52

*In re Lister*,
   583 F.3d 1307 (Fed. Cir. 2009) ......................................44, 45, 47

*In re Man Machine Interface Techns. LLC*,
   822 F. 3d 1282 (Fed. Cir. 2016) .................................................15

*Mintz v. Dietz & Watson, Inc.*,
   679 F.3d 1372 (Fed. Cir. 2012) .................................................39

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) .................................................16

*Oak Tech., Inc. v. Int'l Trade Comm'n*,
   248 F.3d 1316 (Fed. Cir. 2001) .................................................11

*OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*,
   701 F.3d 698 (Fed. Cir. 2012) ...................................................22

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
   400 F.3d 901 (Fed. Cir. 2005) .....................................................6

*Pride Mobility Prods. Corp. v. Permobil, Inc.*,
   818 F.3d 1307 (Fed. Cir. 2016) ...............................................7, 8

*Ex Parte Rasmussen*,
   Appeal No. 2011-007741, 2013 WL 3971698 (P.T.A.B. July
   31, 2013) .................................................................................50

*Ex Parte Rembrandt Gaming Techs.*,
   No. 2014-007853, 2014 WL 6847163 (P.T.A.B. Dec. 2, 2014) .................51

*In re Rouffet*,
   149 F.3d 1350 (Fed. Cir. 1998) .................................................17

*Samsung Elecs. Co., Ltd, v. Rembrandt Wireless Techs.*,
   IPR2014-00514, Paper 18 pp. 6-9 (P.T.A.B. Sept. 9, 2014) and
   Paper 20 (Oct. 24, 2014) ...........................................................51

*Sanofi-Synthelabo v. Apotex, Inc.*,
   550 F.3d 1075 (Fed. Cir. 2008) .................................................26

*SRI Int'l, Inc. v. Internet Sec. Sys.*,
   511 F.3d 1186 (Fed. Cir. 2008) ............................................................46, 47

*Suffolk Techs., LLC v. AOL Inc.*,
   752 F.3d 1358 (Fed. Cir. 2014) ...................................................46

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ...................................................18

*Tempo Lighting, Inc. v. Tivoli, LLC*,
   742 F.3d 973 (Fed. Cir. 2014) ....................................................11

*Thorner v. Sony Comput. Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ...................................................10

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
   837 F.2d 1044 (Fed. Cir. 1988) ...................................................25

In re *Watts*,
   354 F.3d 1362 (Fed. Cir. 2004) ....................................................9

*In re Wyer*,
   655 F.2d 221 (C.C.P.A. 1981) ....................................................47

*Wyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010) ...................................................36

*Yorkey v. Diab*,
   601 F.3d 1279 (Fed. Cir. 2010) ...................................................58

**Statutes**

35 U.S.C. § 102(b) ..............................................................................41

35 U.S.C. § 311(b) ..............................................................................41

35 U.S.C. § 314(d) ..............................................................................30

35 U.S.C. § 316(a) ..............................................................................35

**Rules**

Fed. R. Evid. 901 ...............................................................................56

**Page**

**Regulations**

37 C.F.R. § 42.51(b) ........................................................................35

10088375

**B/E REPLY**

## I. INTRODUCTION

Zodiac's opposition brief demonstrates that both its and the Board's obviousness conclusions are based on the very hindsight analysis that this Court so frequently warns against. Time and again, Zodiac cites the Board's conclusion that the patent is invalid because it would have been obvious for "a person of ordinary skill in the art to apply the forward wall of Betts to other enclosures, including lavatories." Opp. 45. But other than using the '838 patent itself for impermissible hindsight reconstruction, there was no basis to support this conclusion. Zodiac relies exclusively on its expert's opinion for this point. That opinion was conclusory, and when asked to explain exactly how he could apply Betts to lavatories, Zodiac's expert could not do so.

In actual practice, nobody applied Betts to lavatories, not even the aircraft manufacturers that owned Betts for decades and made the coat closets it described. Indeed, aircraft manufacturers flew the Betts closet on the same planes as straight-walled lavatories and still did not apply the teachings of Betts to lavatories. The '838 patent is the first to disclose and claim an aircraft lavatory with a curved wall, an achievement that immediately began "taking the industry by storm." Appx03195. Irrespective of how simple B/E's curved-wall lavatory now appears in hindsight, it was error to find it obvious in light of the Betts coat closet.

The reversible errors began at claim construction, where Zodiac and the Board stretched the claims beyond all reasonable limits to ensnare the very prior art that the patent's written description excluded. Zodiac provides no support for the Board's conclusions that: (1) read the phrase "not flat" to cover a "flat" seat, (2) effectively struck the word "unit" from the phrases "enclosure unit" and "lavatory stall unit", and (3) failed to even construe "lavatory stall unit" to resolve a key dispute.

As Zodiac's opposition also demonstrates, the reversible errors were compounded during the Board's claim application and throughout its obviousness analysis. For example, Zodiac turns to the '838 patent itself to demonstrate the alleged "motivation" to apply the teachings of Betts to an unidentified lavatory or enclosure unit. Further, recent Federal Circuit decisions have reversed the Board due to the very same errors that B/E identified in its opening brief. These errors include, among other things, relying on conclusory expert testimony to gap-fill missing claim elements in the Board's single-reference obviousness analysis, and the Board's refusal to properly consider B/E's substantial objective evidence of non-obviousness.

In an attempt to justify the Board's incorrect result, Zodiac emphasizes that B/E's invention seems simple. But Federal Circuit authority explains the need to be vigilant against hindsight bias in precisely such seemingly simple

inventions. "I could have thought of that if I really wanted to" is not a sufficient basis for an obviousness conclusion.

The Board's erroneous conclusions should be reversed.

## II.    ZODIAC SIDESTEPS THE KEY CLAIM CONSTRUCTION ISSUES

The Board made several claim construction errors in reaching its obviousness conclusion, and Zodiac's opposition largely ignores the key points in B/E's opening brief. For example, Zodiac cannot defend reading the claims to cover their opposites, effectively striking words from the claims, and failing to construe a key claim element. Rather, Zodiac largely repeats the Board's erroneous analysis.

### A.    Zodiac Provides No Support For The Board To Construe The Term "Not Flat" To Include A "Flat" Seat Shape

Zodiac sidesteps a fundamental error in the Board's construction: the claims recite a seat with an aft portion that is "not flat," which clearly cannot cover a "flat" seat back. As Zodiac confirms, the Board's contrary conclusion requires finding that "[it] is not the particular shape of the passenger seatback that is important to the claimed inventions." Opp. at 35. But the claims squarely contradict this assertion. For example, claim 1 defines the shape of the lavatory wall to "conform to the **shape** of the exterior aft surface of the aft portion of the aircraft cabin passenger seat." Appx00038, claim 1 (emphasis

added). Any claim construction based on the faulty premise that the shape of the seatback is unimportant must therefore be reversed.

**1.  Zodiac Merely Repeats The Board's Erroneous Conclusion That B/E "Reads Out" "In A Vertical Plane"**

B/E explained in its opening brief (at 19-24) the errors in the Board's conclusion that B/E's proposed construction would somehow "read out" the "in a vertical plane" language. Zodiac's argument that, in B/E's construction, the phrase "'in a vertical plane' would then lack meaning" is wrong. Opp. at 35. As explained, "a vertical plane" is a reference plane against which the shape of the seat is measured. That is, one of skill in the art would determine if the seatback is contoured by considering its shape with respect to a plane extending from the bottom of the seat to the top (as distinguished, for example, from a horizontal plane extending from the seatback's face to its back, or from its right to its left). Appx03642-46, ¶¶ 109-16. Contrary to Zodiac and the Board, this does not render the term meaningless. Rather, it provides context to one of skill in the art for understanding the shape of seats that fall within the scope of the claims.

Zodiac largely ignores a fundamental error in the Board's reasoning. Zodiac dedicates just 3 sentences (Opp. at 35) to addressing the Board's improper redrafting of the claims, in which the Board rewrote the claims to move the position of the word "not" in a way that substantially alters their

meaning and scope. *See, e.g.,* Br. at 20 (Board re-drafts <u>not flat</u> claim language to cover <u>flat but not in a vertical plane</u>); *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373 (Fed. Cir. 2004) ("Courts are not permitted to redraft claims."). Zodiac states "[t]he word 'not' modifies the entire phrase 'flat in a vertical plane'—a phrase used repeatedly in the specification," Opp. at 35, but never explains how this justifies the Board re-positioning the word "not" in the claims. The claim says "<u>not</u> flat." Zodiac provides nothing to support the Board's conclusion that the claim nonetheless covers a seat that <u>is</u> flat "but which is <u>not</u> within a vertical plane." Br. at 20.

To ensnare the prior art, Zodiac seeks to expand the claims to include flat seats that may be simply "leaning backwards." Opp. at 34. But nothing in the intrinsic record supports such a configuration. The claims do not discuss relative positions of the seatback such as "tilt," "lean," or "recline." Rather, they focus <u>only and explicitly</u> on the "shape" of both the seatback and the substantially conforming wall "having a <u>shape</u> that is substantially not flat in a vertical plane" (claim 1). Additionally, in the "background of the invention" section, *e.g.*, Appx00037, 1:20-32, the specification discusses the shape of "juxtaposed" structures to eliminate gaps between mismatched shapes. It does not discuss anything about seat recline, tilt, or lean. Zodiac provides no support for construing the claims in terms of the relative <u>position</u> of the seatback, as opposed to its <u>shape</u>.

10088375

Zodiac also attempts to read into the claims a limitation based on one of the figures. This is error. Zodiac argues that figures "show[] the 'vertical plane' in Figure 2, reference 22, as perpendicular to the floor of the passenger cabin." Opp. at 36. Zodiac equates the claim language "in a vertical plane" with reference numeral 22 from Figure 2. But it is improper to use a preferred embodiment depicted in a figure to limit a claim. *Playtex Prods., Inc. v. Procter & Gamble Co*., 400 F.3d 901, 907 (Fed. Cir. 2005) ("By its reliance on the figures, the district court improperly limited claim 1 to a preferred embodiment. We have consistently advised against this approach to claim construction."). Here, the specification makes plain that "the vertical plane 22" is a part of one exemplary embodiment that depicts the reference plane for one example seat illustrated in a fully upright position. Appx00038, 4:8-10 ("Referring to the drawings, which are provided by way of example, and not by way of limitation.").

This example is consistent with the claim language that measures flatness with respect to "a̲ vertical plane." "The vertical plane 22" is certainly one of the many vertical planes by which the shape of the seatback could be measured, depending on how the seat is positioned at the time of measurement. "A" means "one or more," *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1355 (Fed. Cir. 2000), making clear that there are multiple potential vertical

planes that could be used to measure the shape of the seat in whatever its position at the time of measurement.

In any event, the specification, like the claims, describes shape and not position: "passenger seats … have **shapes** that are contoured in the vertical plane" (Appx00037, 1:22-24); the "forward wall portion has a **shape** that is substantially not flat in the vertical plane" (Appx00038, 4:25-26); "the forward wall portion substantially conforms to the **shape** of the exterior aft surface" of the passenger seat (Appx0038, 4:37-39) (emphasis added). All these descriptions are with respect to Figure 2 in the patent (including the "vertical plane 22" that Zodiac points to). Zodiac's argument that the patent somehow refers to position or tilt, and not shape, when it describes the seat as "not flat in a vertical plane" is unequivocally wrong. The "vertical plane" simply identifies the axis about which the shape is not flat (i.e., top-to-bottom as opposed to side-to-side).

As discussed in B/E's opening brief (at 20), this Court reversed a Board decision that construed a claim term to cover its opposite, just as the Board did here. *Pride Mobility Prods. Corp. v. Permobil, Inc.*, 818 F.3d 1307, 1312 (Fed. Cir. 2016). There, the Board construed a claim that recited a mounting plate "oriented **perpendicular** to the drive wheel axis" as covering a configuration in which the axis was "**parallel** to the planar surface of a substantially planar mounting plate." *Id.* (emphasis added). This Court held that construing

"perpendicular" to cover its geometric opposite, "parallel," was erroneous. *Id.* at 1314 ("We do not see how the claim language can mean anything else without obvious strain."). Zodiac cannot, and has not even attempted to, distinguish the *Pride Mobility* decision.[1]

Just like "perpendicular" does not encompass "parallel," "not flat" cannot encompass "flat." Put differently, the phrase "a shape that is substantially <u>not flat</u> in a vertical plane" cannot be construed to cover <u>a flat shape</u> along the top-to-bottom axis. The Board's construction should be reversed.

### 2. Zodiac Advances An Untimely And Unsupported New Claim Construction Theory

Perhaps realizing that the Board's claim construction is unsupportable, Zodiac now offers an eleventh-hour proposed construction not presented to the Board below. In opposition to B/E's appeal, Zodiac now argues that "[t]he plain meaning of the claims thus includes any seat that has an aft portion that extends further aft than another aft portion of the seat and thus is substantially not flat in a vertical plane." Opp. at 34. Zodiac cannot raise a new claim construction for the first time on appeal. *Howmedica Osteonics Corp. v.*

---

[1] Zodiac failed to address *any* of the authority cited in B/E's opening brief that discussed the impropriety of the Board's conclusion on the "not flat" term. Zodiac cites only a single decision on this issue, the *Cardiac Pacemakers* case, the same decision that the Board relied upon to reach its erroneous conclusion. Opp. at 33.

*Zimmer, Inc.*, 640 F. App'x 951, 960 (Fed. Cir. 2016) ("Without 'the benefit of the Board's informed judgment' in the first instance, we decline to consider arguments not raised before the Board.") (quoting *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004)).

Regardless, not only is Zodiac's new proposed construction untimely, it is also wrong. It again calls to mind tilt, and has no basis in the intrinsic record. A flat seat that is tilted is still flat. The claims plainly require a specific seat shape, irrespective of tilt: one that is both "not flat in a vertical plane" and "substantially conforms" to the shape of the wall "immediately aft of and adjacent to" it. Zodiac's new construction simply disregards these other limitations in the claim, in an attempt to capture the prior art. Zodiac's new proposed construction, with no basis in the specification or accounting for the remainder of the claim language, is incorrect.

## B. Zodiac Does Not Justify The Board Reading The Word "Unit" Out Of The Claim Term "Enclosure Unit"

Zodiac proffers two primary justifications for the Board's erroneous construction that effectively strikes the word "unit" from the claims. First, Zodiac relies on the Board's reasoning that the specification somehow redefined "enclosure" and "enclosure unit" to mean the same thing. Second, Zodiac suggests that a "unit" cannot have internal sub-spaces serving the same function as the larger space (effectively arguing that a bathroom is no longer a

bathroom if it also has a cabinet inside it). Zodiac's arguments are wrong and contradict the plain claim language.

### 1. Zodiac Continues To Read Out The Word "Unit"

Zodiac primarily relies on the same basic argument that the Board did, namely that the patent does not distinguish between "enclosure" and "enclosure unit" – "the specification . . . uses the terms in the same way." Opp. at 41. Even if this were true (it is not), it is not sufficient to support any conclusion that claim terms "enclosure" and "enclosure unit" mean the exact same thing. That is, the two-word term "enclosure unit" would have to have been lexicographically redefined in the specification as meaning the single word "enclosure." But the requirements to prove lexicography or disavowal are "exacting." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012). Such "exacting" lexicography or disavowal is nowhere to be found in the intrinsic record, and Zodiac does not argue that it is.

Zodiac continues to argue that "the first sentence of the 'Summary of the Invention' section used the term 'enclosure' in the same way as the 'background'." Opp. at 41. Even accepting this argument, this is nowhere near the "exacting" re-definition that would be required under *Thorner*. At most, Zodiac shows merely that the specification uses both the broader term "enclosure" and the narrower term "enclosure unit." But this only serves to further underscore B/E's point. "[A] possibly broader disclosure accompanied

by an explicit narrow claim shows the inventor's selection of the narrow claim scope." *Gen. Elec. Co. v. Int'l Trade Comm'n*, 685 F.3d 1034, 1041 (Fed. Cir. 2012). That is, rather than any re-definition of these two distinct terms, their usage in the specification and claims makes clear their differing scope.

Zodiac states that B/E's explanation (at Br. 27), that "enclosure unit" is a specific species of "enclosures" generally, "finds no support in the specification." Opp. at 41. First, this is incorrect for the reasons explained in B/E's opening brief (at 25-28). Second, even if Zodiac were right, the primary claim construction question is what the claims say. *Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014) ("In claim construction, this court gives primacy to the language of the claims."). The specification cannot be used to contradict plain claim language. *Oak Tech., Inc. v. Int'l Trade Comm'n*, 248 F.3d 1316, 1329 (Fed. Cir. 2001) ("Specifications teach. Claims claim."). Here, claim 9 uses the term "enclosure" in the preamble, and "enclosure unit" in the claim body. The claim language thus makes clear that these two terms must mean something different. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("Our precedent instructs that different claim terms are presumed to have different meanings."). Zodiac offers no justification for relying on the specification to contradict this plain usage of the terms in the claims.

## 2. Zodiac Incorrectly Argues That A "Single Functional Space" Cannot Include Internal Sub-Spaces

Zodiac next suggests that in B/E's construction, the claimed "unit" cannot have internal sub-spaces as part of the same overall function as the larger space that contains them. Opp. at 37-40. Zodiac is wrong. Zodiac's argument is based on ignoring the word "functional" in "a single functional space." The patent describes several different functional spaces: lavatories, for bathroom functions; galleys, for food related functions; and closets, for stowage related functions. Appx03488-90, 54:16-56:16; Appx03351, 49:5-6; Appx03337, 35:11-14; Appx03739, ¶ 59; Appx03636, ¶ 94; Appx03487-88, 53:24-54:15; Appx03721, ¶ 17. Zodiac points to, for example, amenity storage 46 which is contained inside the lavatory functional space in the embodiment depicted in Figure 2. But lavatory "amenity" storage and dispensers are understood by those of skill in the art as furthering and supporting lavatory functions. Appx03339, 37:5-12; Appx03340, 38:7-14.[2] That is, the outer boundary of the lavatory defines the "single functional space," and everything inside of it, such as toilets, sinks, and amenity storage sub-spaces, furthers the lavatory functions of that space.[3]

---

[2] Zodiac states, without citation to any evidence, that "those spaces [interior lavatory space and amenity stowage] serve different functions." Opp. at 41. This is incorrect, and contradicted by the actual evidence of record.

[3] Even the extrinsic evidence cited by the Board (and Zodiac) supports this. *See* Appx02150 (a patent application publication on a galley, serving food

- 12 -

Zodiac is incorrect in arguing that "B/E's construction would exclude the preferred embodiment in Figure 2, which has more than a single enclosed functional space." Opp. at 38. Rather, Figure 2 depicts <u>secondary</u> storage spaces, such as amenity storage space 42. Dependent claim 4 claims "a secondary space in said interior lavatory space." Because an independent claim is broad enough to include its dependent claims, claim 1 may include a lavatory space that has zero, one, or more than one secondary spaces within it. Zodiac's argument that the claimed lavatory functional space cannot include internal sub-compartments is thus incorrect. Claim 1, under the proper construction, may include a single functional space that includes other sub-spaces inside of it, and those sub-spaces further the function of the claimed lavatory. Amenity storage space 42 is one such space.

## C. Zodiac Cannot Justify The Board's Decision Not To Resolve A Fundamental Dispute On The Term "Lavatory Stall Unit"

Of the several errors B/E identified with respect to the "lavatory stall unit" term, Zodiac focuses its response on only one: Zodiac continues to press the argument that "lavatory stall unit" need not be construed because "Zodiac did not rely on any particular prior art lavatory." Opp. at 42. Zodiac is right that the only reference in the instituted grounds is Betts, which discloses no

related functions). All of the sub-spaces that the galley in this reference contains further those food related functions: "Galleys incorporate such features as storage areas, ovens, sinks, coffee makers, and the like." Opp. at 39 (citing Appx00037).

lavatory whatsoever. But that fact actually demonstrates why construing the "lavatory stall unit" term is imperative. By ignoring this term's actual meaning, the Board was able to find that the claims encompass structures plainly outside of their actual scope—e.g., the Betts closet. B/E discussed in its opening brief an illustrative decision that addressed problems arising from a failure to resolve a fundamental claim construction dispute, and Zodiac offers no response.

In *Cutsforth, Inc. v. Motivepower, Inc.*, 643 F. App'x 1008 (Fed. Cir. 2016), a patent owner proposed a construction for a key disputed term that included the phrase "extending from." *Id.* at 1009. The Board rejected the construction offered by the patent owner "without providing a specific construction." *Id* at 1010. Additionally, petitioner "presented no evidence to justify the Board's interpretation." *Id.* at 1011. This resulted in the claim covering something not "extending from" the claimed structure as the claim recited, but that instead "protrudes into" it. *Id.* This Court found that this result, which purportedly rested on the "plain meaning" of "extending from," was unreasonable. *Id.*

The result here is similarly unreasonable. The Board provides no specific construction for the "lavatory" terms. There is no evidence that "lavatory" has any meaning other than the plain meaning proposed by B/E. Yet, the result here is that the claims were found to cover structure that is clearly not a lavatory. In fact, the Board uses "similar reasons to those with respect to

'enclosure unit'" to understand the term and apply the claims to a prior art closet, as opposed to the claimed lavatory. Appx00009. In failing to construe the term "lavatory stall unit," here, just as in *Cutsforth*, the Board erroneously found that the claim effectively covers more than its reasonable scope; the only prior art of record is not a lavatory.

Zodiac provides no response to the other authority B/E included in its opening brief, which also demonstrates that effectively ignoring the term "lavatory" in the lavatory claims is improper. Of the ample caselaw B/E cited, one decision is especially noteworthy—*in re Man Machine Interface Techns. LLC*, 822 F. 3d 1282 (Fed. Cir. 2016). There, the claim term recited a "thumb switch." This Court reversed the Board's construction that permitted activation of the switch "by another digit." *Id.* at 1285. That is, the Court unsurprisingly held that a claim that expressly required a "thumb" could not be met with any finger more generally. Similarly here, a claim that expressly requires a "lavatory" cannot be met with a more generic enclosure, as if the word "lavatory" was not used in the claim. A "lavatory" is not any general "enclosure," just like a "thumb" is not any general "digit."

Moreover, Zodiac is mistaken when it suggests that "B/E does not explain how construction of the term 'lavatory stall unit' would affect the Board's finding." Opp. at 44. For example, on pages 42-43 of its brief, B/E explained and provided supporting evidence for several of the unique issues

that lavatory systems implicate, as opposed to enclosures more generally.

Zodiac's own expert testified about systems and features specific to lavatories.

Appx03339-44, 37:5-42:17. At least those features would have to be accounted

for in a modified Betts, or in any attempt to apply Betts's elevated coat closet

structure (were that even possible) to a flat-walled lavatory. B/E's proposed

construction makes clear what minimum features are covered by the plain

meaning of "lavatory stall unit," and must thus be accounted for in the Board's

obviousness analysis. Construction of "lavatory stall unit" is therefore required

to resolve the dispute presented by B/E. *O2 Micro Int'l Ltd. v. Beyond

Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

The Board's claim constructions (or lack thereof) were in error, and as a

result its Final Written Decision should be reversed.

## III.   THE BOARD'S OBVIOUSNESS CONCLUSION IS UNSUPPORTED AND ZODIAC OFFERS NO SUBSTANTIVE ARGUMENT IN RESPONSE

Zodiac's entire case boils down to this: Zodiac argues that it would have

been obvious to apply a wall shape gleaned from Betts's elevated, divided coat

closet and doghouse storage structures to lavatories and enclosure units. Opp.

at 45. But this conclusion is not supported by any credible evidence—Zodiac

relies exclusively on the conclusory statement of a litigation expert who, when

pressed under oath, could not explain how he would actually accomplish the

purportedly obvious application of the Betts "wall" to a lavatory. The evidence

of record, including the substantial objective indicia of nonobviousness, demonstrates that the obviousness conclusion is incorrect.

### A. The Board's "Motivation" Analysis Is Conclusory And Results In The Manufacture Of Claim Limitations Missing From The Single Reference At Issue

#### 1. The Board's "Motivation" Analysis Is Improper

As an initial matter, Zodiac's opposition brief demonstrates a fundamental problem with Zodiac and the Board's conclusions: the alleged "motivation" is based on hindsight in view of the '838 patent itself. This Court routinely rejects that erroneous approach. In attempting to justify the Board's purported "motivation," Zodiac states "the patent explains that the space saving motivation for the alleged invention applies equally to lavatories and other enclosures." Opp. at 54. But "[t]o prevent the use of hindsight based on the invention to defeat patentability of the invention," this Court requires that the motivation to combine analysis be conducted "with no knowledge of the claimed invention." *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). Here, Zodiac explicitly recognizes that only the '838 patent's own specification could have provided the motivation necessary to support the Board's obviousness conclusion. That is error.

Other than the '838 patent, Zodiac points to only an unsubstantiated conclusion from its own expert witness as support for the Board's "motivation" analysis. Such vacuous support, if permitted, would invalidate all patents

because missing limitations could always, through the empty rhetoric of litigation witnesses, be stitched into the prior art from whole cloth. But such unsupported conclusory "expert" testimony is insufficient. "The showing of a motivation to combine must be clear and particular, and it must be supported by actual evidence." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1334 (Fed. Cir. 2002). Here, Zodiac musters no actual evidence.

In its opening brief (at 44-45), B/E explained that the Board's unsubstantiated conclusion, regarding an "important structural limitation" missing from the prior art, cannot stand in view of this Court's decision in *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1365 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 1439 (2015). Zodiac provides no response. Moreover, after B/E filed its opening brief, this Court specifically pointed to the *Hear-Wear* decision to again reverse the Board's unsubstantiated obviousness conclusion on facts similar to those presented here. *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355 (Fed. Cir. 2016).

Just as here, *Arendi* involved a Board obviousness conclusion based on a single prior art reference. This Court acknowledged that such an obviousness conclusion is "less common," but might be appropriate "if it would have been obvious to modify that reference to arrive at the patented invention."[4] *Id.* at

---

[4] This presents a separate and independent reason to reverse the Board. Zodiac acknowledges that the Board did not support its single-reference

1361. Discussing the *Hear-Wear* decision, this Court held "in cases in which

'common sense' is used to supply a missing limitation, as distinct from a

motivation to combine, moreover, our search for a reasoned basis for resort to

common sense must be searching. And, this is particularly true where the

missing limitation goes to the heart of an invention." *Id.* at 1363. Based on

*Hear-Wear*, this Court reversed the Board's acceptance of "a conclusory

assertion from a third party about general knowledge in the art without

evidence on the record, particularly where it is an important structural

limitation that is not evidently and indisputably within the common knowledge

of those skilled in the art." *Id.* (citing *Hear-Wear*, 751 F.3d at 1365-66).

The patent at issue in *Arendi* involved using computer programs to

search for information. The question on validity was whether it would have

been obvious to search for a telephone number in the single prior art reference

at issue. This "searching" claim limitation was undisputedly missing from the

---

obviousness conclusion based on Betts with a finding that "it would have been
obvious to modify that reference [Betts] to arrive at the patented invention."
*Arendi,* 832 F.3d at 1361. Indeed, the Board's conclusion is not based on
modifying the single prior art reference at all. Instead, it is based on "applying"
the prior art reference to some unidentified lavatory or enclosure unit. Opp. at
55 ("C&D never argued that anyone would attempt to turn the [Betts] closet
into a lavatory."). This raises at least two problems. First, it does not apply the
correct legal analysis that could give rise to the "less common" result that
Zodiac urges. Second, the uncontradicted, and indeed admitted, evidence is that
the single reference at issue here, Betts, cannot be modified into a lavatory,
Appx03392-93, 90:24-91:4, and thus its modification would not "arrive at the
patented invention."

prior art. *Id.* at 1366. Yet, the Board concluded that it would have been "common sense" to do the required "searching" in the prior art reference. Moreover, "the only documentary support the Board recited was the declaration of [Petitioner's expert]." *Id.* at 1364. In reaching its conclusion, the Board pointed only to "conclusory statements and unspecific expert testimony regarding searches in general." *Id.* at 1366. The Board's decision could not stand because, among other things, "these errors were particularly problematic considering the fact that a key limitation of the [challenged] patent was missing from the prior art reference in dispute." *Id.*

The facts here are nearly identical. Zodiac similarly urges the "less common" result of single-reference obviousness over Betts. There is no dispute that Betts is not a lavatory, and is thus missing key structural limitations necessarily required by a "lavatory stall unit." And, the curved wall lavatory goes right to the heart of the inventions, as the patent explains: "[i]t would be desirable to provide an aircraft lavatory or other enclosure that can reduce or eliminate the gaps and volumes of space previously required between lavatory enclosures and adjacent structures to allow an adjacent structure such as passenger seating installed forward of the lavatory." Appx00037, 1:50-55.

The Board relies on no evidence other than Zodiac's expert statement that "[o]ne of ordinary skill in the art would have been motivated to apply the forward wall design of [Betts] to other enclosure units, including lavatories."

Appx00014; Appx01500, ¶ 65. This statement is "conclusory," "unspecific," and "general," at best, and provides absolutely no underlying facts or evidence. *Arendi*, 832 F.3d at 1366. And, this sentence is the sole basis on which the Board concluded that the lavatory claims were invalid over prior art that never discloses or even suggests a lavatory. Just as in *Arendi*, this result is "particularly problematic considering the fact that a key limitation of the … patent was missing from the prior art reference in dispute." *Id.*

Zodiac next claims that "B/E does not dispute the substance of this testimony, but only attacks Mr. Anderson's testimony as conclusory." Opp. at 54. Not so. Mr. Anderson's testimony is certainly conclusory, but it is also incorrect. B/E pointed out the erroneous nature of Mr. Anderson's testimony at length in its opening brief, *e.g.,* pages 45-51. For example, on pages 49-50 of its brief, B/E pointed out Mr. Anderson's admissions that contradict his own conclusion, Dr. Dershowitz's testimony that also contradict Mr. Anderson's conclusion, and facts demonstrating that the Board's conclusion nullified the "intended purpose" of the reference. Zodiac offers no substantive response, simply ignoring these issues in opposition.

### 2. Neither Zodiac Nor The Board Address The Lack Of A "Reasonable Expectation Of Success"

Zodiac offers no response regarding the additional requirements to prove obviousness that Zodiac and the Board failed to demonstrate. For example, the

record shows that skilled artisans did not have a reasonable expectation that Betts's divided enclosures could be morphed into a lavatory. This forecloses obviousness. "An obviousness determination <u>requires</u> that a skilled artisan would have perceived a reasonable expectation of success in making the invention in light of the prior art." *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 706-07 (Fed. Cir. 2012). This "reasonable expectation of success" must be present in addition to the required "motivation," which is lacking as described above. *Intelligent Bio-System v. Illumina*, 821 F.3d 1359, 1368-69 (Fed. Cir. 2016) ("It was [Petitioner's] burden to demonstrate <u>both</u> 'that a skilled artisan would have been <u>motivated to combine</u> the teachings of the prior art references to achieve the claimed invention, <u>and</u> that the skilled artisan would have had <u>a reasonable expectation of success in doing so</u>'.") (emphasis added).

Here, Zodiac's witness admits that the prior art cannot be modified into a lavatory. Appx03392-93, 90:24-91:4. There can be no "reasonable expectation of success" in a modification that experts agree could not have been done.

Zodiac and the Board argue that the issue is not modifying Betts into a lavatory, but instead applying the Betts "wall" to a lavatory. This is a distinction without a difference. Either way, the question is whether one of skill in the art could or would start with Betts and end up with a curved-wall lavatory. Neither Zodiac nor the Board has pointed to anything in the record

that indicates one of skill in the art would have had a reasonable expectation that this design would succeed. Betts itself certainly does not suggest it.

Indeed, the evidence shows that an aircraft manufacturer actually had in hand both an embodiment of Betts and a flat-walled lavatory, but did not make the "application" that Zodiac urges. Betts was patented in 1973 by McDonnell Douglas. It was implemented and flown on commercial DC-10 aircraft. Appx03396, 94:9-19. McDonnell Douglas also had flat-walled lavatories on the same aircraft. Appx03398, 96:4-11. In other words, even with the two structures on the same plane, McDonnell Douglas did not apply Betts to its conventional and flat-walled lavatories. At bottom, the record evidence demonstrates the opposite of Mr. Anderson's conclusory opinion: when faced with Betts and flat-walled lavatories, no one applied the teachings of Betts to those lavatories. Rather, as Mr. Anderson himself confirmed, "Betts cannot be turned into a lavatory." Appx03392-93, 90:24-91:4.

This Court should reverse the Board's obviousness conclusion because its "motivation" analysis is based on hindsight and unsubstantiated conclusory testimony, and its "reasonable expectation of success" analysis is non-existent and contrary to the facts of record.

**B. Zodiac Improperly Argues About The "Gist" Or "Point Of Novelty" In Its Opposition, But This Approach Has Been Rejected By This Court And The Supreme Court**

Zodiac's oft-repeated mantra in opposition, that "B/E attempts to shift the focus away from the allegedly novel forward wall" (Opp. at 45), represents a fundamental error regarding the law of obviousness. Zodiac's argument revolves around "this single feature – an aft extending recess in the forward wall – <u>as the only allegedly novel</u> feature in the patent." Opp. at 7 (emphasis added). *See also, e.g.*, Opp. at 46-48.[5] While that feature was novel in the context of the claimed structures, Zodiac's statement is incorrect; the claims include many more features, as explained in B/E's opening brief. Regardless, even if it were correct, an obviousness analysis must focus on the claims as a whole, not only the "gist," "heart of invention," or alleged "point of novelty." The Supreme Court has made clear that "the combination patent covers only the totality of the elements in the claim . . . there is no legally recognizable or protected 'essential' element, 'gist,' or 'heart' of the invention in a

---

[5] Continuing its legally erroneous obviousness analysis, Zodiac tries to justify the Board's conclusion based on its allegation that "the disclosures in Betts are fundamentally the same as those in the '838 patent." Opp. at 47. Again, this is incorrect, and also legally irrelevant. Obviousness analysis must compare the claims to the prior art, not the patent specification to the prior art. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966) ("differences between the prior art and **the claims** at issue are to be ascertained"); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1053 (Fed. Cir. 1988) ("This court has repeatedly held that it is the claims which define the invention. The district court therefore erred in comparing these specification figures with the prior art to determine the patentability of the invention.").

10088375

combination patent." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344–45 (1961).

"The determination of obviousness is made with respect to the subject matter as a whole, not separate pieces of the claim." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1086 (Fed. Cir. 2008). Yet Zodiac essentially ignores several claim limitations that it improperly deems unimportant and thus fails to consider. For example, Zodiac ignores that claim 1 focuses on a lavatory and that nobody put a curved wall on a lavatory before the '838 patent. Zodiac ignores that the claim requires a seat with a curved back that interacts with the lavatory wall. And Zodiac ignores the requirement that the shape of the lavatory wall must substantially conform to the curved shape of the seat in front of it. Focusing exclusively on the wall, Zodiac uses hindsight to argue that such a wall, unconstrained by other limitations, can be obviously placed on any structure. But there is no art other than the '838 patent itself that has the combination of elements Zodiac imagines in a modified Betts. This Court warned against Zodiac's approach: "Focusing on the obviousness of substitutions and differences, instead of on the invention as a whole, is a legally improper way to simplify the often difficult determination of obviousness." *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 724 (Fed. Cir. 1990) ("This theory boils down to no more than hindsight reconstruction.").

## C. Zodiac Offers No Substantive Response Regarding Betts's Admittedly Flat Seatback

Regarding Betts's flat seatback, Zodiac continues to attempt to justify the obviousness conclusion based on the '838 patent's teachings. *See, e.g.*, Opp. at 47 ("[A]s the '838 patent itself shows, there is nothing novel or non-obvious about the shape of the passenger seat."). This hindsight reasoning is wrong, and is further an improper basis to support an obviousness conclusion. Moreover, Zodiac ignores most of the points made in B/E's opening brief. Instead, it repeats three errors that underlie the Board's erroneous analysis.

First, novelty of the passenger seat is not relevant. These are combination claims. A lavatory with a curved wall that conforms to the shape of the passenger seat in front of it, along with the other claim elements, is what is novel. Betts has a flat seat and therefore the wall cannot be, and is not, shaped to conform to a non-flat seat.

Second, Zodiac seeks to justify the Board's conclusion by using Betts "figure 1, which shows that the shape of the seatback and the shape of the recess precisely conform." Opp. at 50. As explained in B/E's opening brief, this is not correct—the shapes do not conform. Br. at 37-38. Plus, Zodiac impermissibly reads relative proportions and scaling from an unscaled figure in the prior art. "[I]t is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular

sizes if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000).[6]

Third, the Betts wall is not even curved; instead it is a flat wall with a dog house at the bottom, a structure that the '838 patent expressly distinguished. While Zodiac presents attorney argument on appeal that "Betts does not show separate 'doghouse' stowage mounted in front between the closet and the passenger seat," Opp. at 50, its own witness testified otherwise: "Q. In Figure 1 there is an area labeled '16' toward the bottom. Do you see that? A. Yes. Q. Do you understand that to be what would commonly be called a 'dog house'? A. Yes. It looks like 16 is pointed into the interior of that area; which would be where we might put a dog house – a storage – a miscellaneous storage unit." Appx03485, 51:9-17. Because the '838 patent expressly distinguished prior structures with "short, floor-mounted" storage such as

_____

[6] Zodiac further asserts that the seat depicted in Betts is in an "upright position." Opp. at 14, 48. But Zodiac again impermissibly bases this assertion only on the unscaled figures. Betts never states that the seat in Figure 1 is in an upright position, and Zodiac's assertion is not based on any disclosure in the specification. Indeed, the specification describes a seat "of the type having a tiltable backrest 12 for the comfort of the occupant." Appx01044. Because the backrest is only described in the disclosure as "tiltable" or "tilted," one would reasonably conclude that the seat depicted is in a tilted configuration, rather than upright. Regardless, nothing in the patent states that the seat is "upright" as Zodiac asserts, nor purports to identify what the seat looks like with respect to the closet when upright.

doghouses, Appx00037, 1:41, it is improper to read the claims to cover such structure.

At bottom, Zodiac offers no meaningful justification for the Board's conclusion that a claim with a "not flat" seat could be rendered obvious by Betts with its admittedly flat seat.

### D. Zodiac Offers No Substantive Response Regarding Its Witness Admissions About Betts's Separate Enclosures

With regard to the "enclosure <u>unit</u>" and "lavatory stall <u>unit</u>" terms, Zodiac again looks, in hindsight, to the teachings of the '838 patent itself. Zodiac argues that "the teachings of Betts are commensurate in scope with those of the '838 patent." Opp. at 51. Again, this is not true and not relevant to obviousness in any event. And once again, Zodiac cannot avoid the admissions of its own witnesses that contradict its arguments.

Zodiac's Mr. Anderson admits that Betts includes an "upper enclosure" and a "lower enclosure," each divided by an area that is "not an enclosure." Appx03374, 72:3-8; Appx03375-76, 73:23-74:8; Appx03291. Regarding claim 9, the Board held on institution that "three types of enclosure units" stacked one atop the other are not a "single enclosure unit extending from the cabin floor upward," as the claim requires. Appx00208. The Board was referring to the Orange Binder, which all parties agree is a manifestation of the Betts patent. Opp. at 16. Mr. Anderson's admissions make clear that Betts is even

further outside the scope of the claims than the Board originally held. As opposed to "three types of enclosure units" stacked one atop the other, Betts includes two stacked enclosure units, divided by a wall partition that is not even an enclosure at all. Neither Zodiac nor the Board explains how these stacked enclosure units with a wall partition segment between them render obvious the unitary "enclosure unit" claimed.[7]

### E. Zodiac Points To Evidence That The Board Did Not Consider After B/E Moved To Strike It

Zodiac relies in this appeal on a declaration from Paul Sobotta that the Board did not consider in its Final Written Decision. Opp. at 55. This is not art that either Zodiac or the Board relied on for invalidity, and has no place in this appeal. In fact, B/E moved below to strike the Sobotta declaration as irrelevant and untimely. Appx00596, 63:3-10. It would be improper to consider it in the first instance on appeal.

In any event, Mr. Sobotta's testimony was biased, uncorroborated and irrelevant. He testified that he had no documents at all to back up his claims. Appx00429; Appx03929, 55:18-21. In addition, at the time of his declaration, Mr. Sobotta was a Zodiac employee and biased. Appx00430-33; Appx03893, 19:20-21; Appx03894, 20:5-25; Appx03895, 21:10-21; Appx03896, 22:2-7;

---

[7] Zodiac did not appeal the Board's holding with regard to claim 9, and it likely could not have done so in any event. 35 U.S.C. § 314(d). Moreover, it never advanced any claim construction arguments during the course of the IPR to refute this non-appealable holding on institution.

Appx03897, 23:8-16. Prior to the declaration, Mr. Sobotta had sold his company to Zodiac for a very significant payment. Appx00429-30; Appx03912-13, 38:17-39:6. On the merits, the structure allegedly designed for a KLM plane that Mr. Sobotta points to and that Zodiac relies on (Opp. at 56) lacks many claim limitations in the '838 patent, including: there is no lavatory, there is no "substantially conforming" wall, and the shape of the seats is unclear, among other differences. In any event, all this is irrelevant because the evidence was not considered below.

This Court has recently held, in an *en banc* decision, that it is improper to conduct new fact-finding on appeal. Rather, as explained in *Apple Inc. v. Samsung Elecs. Co*., No. 2015-1171, 2016 WL 5864573, at *20 (Fed. Cir. Oct. 7, 2016), "review is limited to whether fact findings made and challenged on appeal are supported by substantial evidence." Here, the Board made no fact-findings regarding the Sobotta material; B/E moved to strike it, B/E substantively contested it, and the Board did not rely on it at all. Zodiac asks this Court to act as a fact-finder in the first instance. Although the Sobotta material does not change the analysis, this request is improper and the Court should not consider this material for the first time on appeal.

## F.   Zodiac Misstates The Law And Facts On B/E's Substantial Objective Indicia Of Non-Obviousness

The Board and Zodiac's argument regarding B/E's substantial objective indicia of non-obviousness is legally improper. Zodiac argues that "[t]he Board considered B/E's evidence, and determined that it was insufficient to overcome the strong evidence of obviousness in view of Betts." Opp. at 63. But this Court in *Apple* held that "[a] determination of whether a patent claim is invalid as obvious under § 103 requires consideration of all four *Graham* factors, and it is error to reach a conclusion of obviousness until all those factors [including objective indicia] are considered." *Apple,* 2016 WL 5864573, at *8.

Here, the Board reached its obviousness conclusion before even considering B/E's objective evidence. *See, e.g.*, Appx00017 (holding claims 9, 21, and 31 obvious before any consideration of the objective evidence). The Board incorrectly relegated the objective analysis to rebuttal evidence, in which the objective evidence must cause the Board to reverse its conclusion after obviousness has already been decided. This is not the law. *Apple*, 2016 WL 5864573, at *8; *Graham*, 383 U.S. at 17-18; *Apple Inc. v. Int'l Trade Comm'n*, 725 F.3d 1356, 1365 (Fed. Cir. 2013) ("Prior to even mentioning the secondary considerations, the ALJ concluded that 'the evidence clearly and convincingly shows that the '607 patent is obvious'. . . That error warrants vacating the ITC's decision."). Put differently, there cannot be "strong

evidence of obviousness in view of Betts," as the Board found, without *first* considering secondary considerations, because such considerations might lead (and here do lead) to the conclusion that there is no obviousness at all.

Moreover, the recent *en banc* decision in *Apple* explained why this is such a critical step: secondary considerations help avoid the type of hindsight reasoning the Board applied in this case. "The Supreme Court explained that various factors may also serve to guard against slipping into use of hindsight, and to resist the temptation to read into the prior art the teachings of the invention in issue. These factors are commonly known as secondary considerations or objective indicia of non-obviousness. These include: commercial success enjoyed by devices practicing the patented invention, industry praise for the patented invention, copying by others, and the existence of a long-felt but unsatisfied need for the invention." *Apple*, 2016 WL 5864573, at *8 (citations and internal quotation marks omitted). B/E provided evidence of each of these factors, but the Board failed to properly consider it.

B/E discussed its substantial objective evidence at length in its opening brief, and will not repeat it *en toto* here. But a few important points from the *Apple* decision warrant further discussion.

B/E presented substantial evidence of industry praise. "Evidence that the industry praised a claimed invention or a product that embodies the patent claims weighs against an assertion that the same claimed invention would have

been obvious. <u>Industry participants, especially competitors, are not likely to praise an obvious advance over the known art</u>. Thus, if there is evidence of industry praise of the claimed invention in the record, it weighs in favor of the non-obviousness of the claimed invention." *Id.* (emphasis added). In *Apple*, Samsung itself praised Apple products that included the claimed "slide to unlock" feature. *Id.*

Here, B/E received the Crystal Cabin Award for its lavatory, "a particularly slimline toilet module which allows for six additional seats to be integrated into an aircraft without sacrificing space or comfort within the toilet cabin and without restricting the space for passengers in other seating rows." Appx03199. This award was given for the exact benefit provided by the '838 patent claims. Appx03747, ¶ 77. This is an important award: "[t]he Crystal Cabin Award is the only international prize for innovations in the field of aircraft cabins. A high-calibre jury made up of renowned academics, engineers, specialist journalists and airline and aircraft manufacturer representatives comes together under the slogan 'Let your ideas take off' to honour extraordinary cabin concepts and products." Appx03201. Moreover, the award is sponsored by several industry participants and competitors in the field of aircraft interiors, including Zodiac itself: "<u>The Crystal Cabin Award 2014 is supported by the following sponsors</u>: Airbus, Aircraft Cabin Management, the Aircraft Interiors Expo trade fair (Reed Exhibitions), Aircraft Interiors

International Magazine, the Aircraft Interiors Middle East (AIME) trade fair, APEX, Bishop GmbH Aeronautical Engineers, DIEHL Aerosystems Holding, Embraer, FERCHAU AVIATION Division, Jetliner Cabins, KYDEX LLC, ŠKODA and Zodiac Aerospace." Appx03200 (emphasis added). Just as in *Apple*, this prestigious award, sponsored by industry participants and competitors including Zodiac itself, is strong objective evidence of non-obviousness.

Copying is also strong objective evidence of non-obviousness. In *Apple*, the defendant did not challenge on appeal that it copied the key patented feature. 2016 WL 5864573, at *13. Similarly here, Zodiac has never once denied that it copied B/E's product, either on appeal or below before the Board.[8] But B/E explained both Zodiac's access to B/E's product and the Zodiac product's substantial similarity to the claims, which this Court has held

---

[8] If Zodiac had made such a denial, B/E could have taken discovery on this issue. But because the Board only allows very limited discovery, Zodiac's non-position on its copying ensured that details of its efforts to replicate B/E's product remained shielded. *Garmin Int'l, Inc. et al. Petitioner*, IPR2012-00001, 2013 WL 2023626, at *3 (P.T.A.B. Mar. 5, 2013) (denying patent owner's motion for additional discovery) ("[I]n inter partes review, discovery is limited as compared to that available in district court litigation"); 35 U.S.C. § 316(a) (limiting discovery allowed in IPR proceedings); 37 C.F.R. § 42.51(b) (providing for limited discovery). Moreover, B/E asked for discovery from Zodiac on this issue during the IPR, but the Board denied B/E authorization to serve discovery requests. Appx03142-53, 15:21-26:16. Zodiac cannot have it both ways: stay entirely silent on copying, therefore denying B/E discovery, and at the same time claim that there is no evidence of copying.

constitutes evidence of copying. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); Br. 60-62. The Board did not consider these facts. But "substantial evidence of copying" must be considered. *Apple*, 2016 WL 5864573, at *14.

As to commercial success, Zodiac argues that there is no nexus[9] between B/E's success, including its nearly billion-dollar contract with Boeing, and B/E's claims. Just as in Apple, this argument fails on the facts. *Apple*, 2016 WL 5864573, at *14-15. Zodiac states "B/E has not offered proof that its sales were the direct result of the unique characteristics of the claimed invention." Opp. at 60. This is not correct. B/E provided, for example, an industry publication that states: "Asked why Boeing selected B/E Aerospace for the new lavatories, Boeing says: 'The B/E Aerospace modular lavatory system was selected for use in the Next Generation 737 to provide greater value to our airplane customers by freeing up floor space in the cabin.'" Appx03183. "Freeing up floor space in the cabin" is accomplished precisely by the curved

---

[9] The Board did not find that there was no nexus when it discussed B/E's substantial commercial success. Indeed, the Board never questioned nexus at least because B/E's product practices the claims. *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1310–11 (Fed. Cir. 2010) ("A prima facie case of nexus is made when the patentee shows both that there is commercial success, and that the product that is commercially successful is the invention disclosed and claimed in the patent.").

wall of the '838 patent and is precisely the benefit offered by the challenged claims.

B/E also presented evidence reflective of a long-felt but unmet need in the art. "Evidence of a long-felt but unresolved need can weigh in favor of the non-obviousness of an invention because it is reasonable to infer the need would not have persisted had the solution been obvious." *Apple*, 2016 WL 5864573, at *15. Zodiac's major argument is that the difference between the '838 patent and the prior art is small and trivial. Opp. at 8. First, that is not so—a lavatory with a curved wall was a revolutionary change in aircraft cabin design, where the lavatory space was previously inviolate. Appx03740-42, ¶¶ 61-64. In any event, a similar argument was rejected by the Court in *Apple:* "There could be a long-felt need for what might be considered a relatively small improvement over the prior art—it all depends upon the evidence." *Apple*, 2016 WL 5864573, at *15.

Zodiac argues that Betts seeks to "provide more room for passengers in an aircraft," which reflects a long-felt need to save space in an aircraft cabin. Opp. at 45 (citing Appx01044, 1:5-7). Yet Betts did not attempt to meet this need with any lavatory, instead focusing on lifting coats out of the way of passengers in a cross-aisle. Appx03381-82, 79:25-80:20. The need for a space-saving lavatory was not met until the '838 patent. Faced with this long felt need, what explanation could there be for the over 30-year delay between Betts

and the '838 patent, other than the inescapable conclusion of non-obviousness? Zodiac and the Board provide no answer, and there is none.

If B/E's objective evidence is "weak" or "moderate," it is hard to imagine a set of facts that could be considered "strong" objective evidence. B/E was barely a participant in the aircraft lavatory market before its '838 patent. But as soon as it released its commercial embodiment, B/E began "taking the industry by storm." Appx03195. It was awarded an exclusive contract for all lavatories on all new Boeing 737 aircraft,[10] displacing an entrenched incumbent supplier. The contract is valued at nearly a billion dollars, which is an objectively large number despite Zodiac's perfunctory demand for more "context." Opp. at 59. And only after losing this valuable contract to B/E did Zodiac begin to sell its copycat product. The objective evidence makes clear that B/E's '838 patent caused a sea-change in the lavatory market, and Zodiac itself rode the wave. Just as was the case in *Apple,* B/E's strong objective evidence demonstrates the non-obviousness of the challenged claims.

It is precisely in a case like this, where the invention seems simple, that the objective indicia must be carefully weighed in order to avoid impermissible

---

[10] The Boeing 737 is the most sold and most popular model of aircraft in the world. Appx03756, ¶ 8; *see also, e.g.,* http://www.bloomberg.com/news/articles/2014-04-16/boeing-s-737-turns-8-000-the-best-selling-plane-ever-isn-t-slowing

hindsight. Indeed, where the invention is less technologically complex, the need for Graham findings can be important to ward against falling into the forbidden use of hindsight. Simply because the technology can be easily understood does not mean that it will satisfy the legal standard of obviousness. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012) ("[O]bjective consideration of simple technology is often the most difficult because, once the problem and solution appear together in the patent disclosure, the advance seems self-evident."). The Board did not follow these precepts, resulting in an incorrect Final Written Decision that must be reversed.

## IV. CONCLUSION

"The ultimate conclusion of obviousness is a legal conclusion to be reached after weighing all the evidence on both sides." *Apple Inc.*, 725 F.3d at 1365. This conclusion is reviewed *de novo*. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064 (Fed. Cir. 2015). Here, the weight of evidence makes clear that the challenged claims are not obvious, and the Board made multiple errors in reaching the opposite conclusion. True, with the '838 patent in hand, it may now seem like what B/E created was simple. But no one, for over 35 years after Betts, created B/E's patented lavatory stall units—not the Betts owners and not even Zodiac, all of whom had been major players in this precise industry for a long time and were motivated to conserve cabin space. In light of all this evidence, concluding that the patent is obvious because it appears

simple is merely a demonstration of "the insidious effect" of hindsight. The Board's obviousness conclusion was based on incorrect claim constructions, was contrary to the evidence and contrary to law, and should be reversed.

**B/E RESPONSE TO ZODIAC'S CROSS APPEAL**

I.     **PRELIMINARY STATEMENT REGARDING CROSS APPEAL**

Zodiac's cross-appeal relates to four challenged claims on which Zodiac failed to carry its burden of proof. The issue is whether one prior art reference in the instituted obviousness ground (the "Orange Binder" or "Orange Book") meets the requirements of a "printed publication" under 35 U.S.C. § 102(b). It does not.

An IPR may proceed only on "patents or printed publications." 35 U.S.C. § 311(b). As such, if the Orange Binder was not a "printed publication," the Board cannot use it in the IPR and Zodiac's argument fails. The Board considered all of Zodiac's evidence and found that Zodiac had not met its burden of proving that the Orange Binder was a "printed publication." Accordingly, the Board held that "Petitioner has not shown by a preponderance that claims 8, 20, 30, and 38 are unpatentable as obvious in view of Betts and the Orange Book." Appx00031. That decision was correct and should be affirmed.

II.    **STATEMENT OF RELATED CASES**

There are no related cases. Zodiac alleges that "B/E voluntarily dismissed [the underlying] lawsuit on June 19, 2014 after C&D explained by letter to B/E that the '838 patent is invalid and that B/E lacked any good-faith

basis to proceed." Opp. at ix. This is incorrect. B/E withdrew its infringement case in district court voluntarily and without prejudice pending Zodiac's IPR.

## III.   STATEMENT OF THE ISSUES

Whether the Board's conclusion that Zodiac failed to prove that the Orange Binder is a printed publication is supported by substantial evidence, where the document itself does not have indicia of publication, and the proffered witnesses lacked personal knowledge of whether the document at issue was published prior to the critical date.

## IV.   STATEMENT OF THE CASE ON CROSS APPEAL

Zodiac submitted declarations regarding some version of the Orange Binder from two Zodiac employees. The declarations were not sufficiently definitive in several key areas. B/E deposed both declarants. They both admitted that they had no personal knowledge of key facts required to demonstrate "public accessibility." The Board made various detailed factual-findings, as discussed below, and concluded that Zodiac failed to establish that the Orange Binder is a printed publication. The Board thus found that Zodiac did not carry its burden regarding the Orange Binder, and held that "Petitioner has not shown by a preponderance of evidence that claims 8, 20, 30, and 38 are unpatentable as obvious in view of Betts and the Orange Book." Appx00031.

## V. SUMMARY OF THE ARGUMENT

The Board thoroughly considered Zodiac's evidence of alleged "publication" of the Orange Binder and found it lacking. In reaching its conclusion, the Board entered several factual findings that are entitled to substantial deference on appeal. Substantial evidence, including admissions from the very witnesses on which Zodiac attempted to rely, supports the Board's decision. The evidence leads to the inescapable conclusion that Zodiac has not met its burden of proof regarding this loose-leaf binder.

Zodiac's two witnesses were each unable to provide facts sufficient to show publication of the Orange Binder before the '838 patent's critical date. For example, neither witness could competently testify that anyone received the particular version of the Orange Binder that Zodiac submitted to the Board. That is, the witnesses did not know whether the particular collection of pages that Zodiac actually submitted in the IPR were the same as what they purportedly received or saw sometime in the past. The Board considered this an important deficiency, as the Orange Binder includes only loose-leaf pages that anyone could insert, remove, or modify at any time, including after the critical date for the '838 patent. The Board also found that: neither witness had personal knowledge of key facts relating to alleged publication, each witness's testimony was not sufficiently probative, and several statements made in the witness declarations were neither credible nor persuasive. *See, e.g.*,

Appx00028-30. Further, neither witness was able to provide facts sufficient to show that they came to possess some version of the Orange Binder due to any "publication"—indeed they were largely ignorant regarding the exact circumstances or contractual obligations under which they may have received it. Thus, substantial evidence supports the Board's findings. The Court should affirm the Board's conclusion that "Petitioner has not shown by a preponderance that claims 8, 20, 30, and 38 are unpatentable as obvious in view of Betts and the Orange Book." Appx00031.

## VI. STANDARD OF REVIEW

Whether an asserted reference qualifies as a "printed publication" is a legal conclusion based on underlying factual determinations. *In re Lister*, 583 F.3d 1307, 1311 (Fed. Cir. 2009). In order to qualify as a printed publication, a reference "must have been sufficiently accessible to the public interested in the art." *Id.* "Whether a reference is publicly accessible is determined on a case-by-case basis based on the facts and circumstances surrounding the reference's disclosure to members of the public." *Id.* (internal quotation marks omitted). This Court reviews the Board's underlying factual determinations for substantial evidence, and its ultimate conclusion *de novo*. *Id.* In reviewing underlying fact-finding, this Court has recently explained "[o]ur job is not to review whether [appellant's] losing position was also supported by substantial evidence or to weigh the relative strength of [appellant's] evidence against

[appellee's] evidence." *Apple,* 2016 WL 5864573, at *12. Rather, just the facts as found by the Board must be supported by "[s]ubstantial evidence . . . [which] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at *2.

## VII.   ARGUMENT

### A.   The Board's Finding That The Orange Binder Is Not A Printed Publication Rests On Several Fact-Findings Entitled To Substantial Deference

The Board's conclusion that the Orange Binder is not a printed publication rests on at least six fact-findings that are entitled to substantial deference. Substantial evidence supports each finding. Based on these six fact-findings, the Board's conclusion that Zodiac has not carried its burden of proof is unavoidable.

The six factual pillars of the Board's conclusion are[11]:

1.   "Mr. Newkirk admitted that he lacked personal knowledge of whether the version of the Orange Book submitted as Exhibit 1004 was actually published in October 1978." Appx00028.

2.   "The Orange Book is actually a three ringed binder of loose-leaf pages that can be inserted or removed, for example when updating the Orange Book." Appx00028.

3.   "The testimony [of John Schoenberg] is not definitive of what was published and by when." Appx00029.

4.   "It [Mr. Schoenberg's testimony] does not establish that any Orange Book ever came into Mr. Schoenberg's possession prior

---

[11] B/E discusses the substantial evidence that supports each of these factual findings in the following section.

to the critical date of the '838 patent." Appx00029-30.

5.  "[Mr. Schoenberg's] testimony does not establish how the Orange Book came into his possession." Appx00030.

6.  "[Mr. Schoenberg] could not say whether the Orange Book that was placed in front of him was the same copy he had once possessed." Appx00030.

These fact-findings demonstrate that Zodiac has not met its burden of proof on public accessibility. The primary question is whether the Orange Binder was published before the critical date, and this Court has held that the touchstone is whether the reference was "publicly accessible." *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1365 (Fed. Cir. 2014) (quoting *SRI Int'l, Inc. v. Internet Sec. Sys.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008)). A reference is publicly accessible when it can be <u>located</u> and <u>accessed</u> by "persons interested and ordinarily skilled in the subject matter or art[] exercising reasonable diligence." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1333 (Fed. Cir. 2009) (quoting *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)).

A reference that is not indexed or catalogued, for example, or is only known to a small group of individuals but unavailable to a diligent researcher, may not qualify as a "printed publication" even though it may be known to some individuals in the field. *SRI Int'l*, 511 F.3d at 1196; *Application of Bayer*, 586 F.2d 1357, 1358-59 (C.C.P.A. 1978) (thesis known to several professors but not catalogued or indexed was not a "printed publication"). To find a

reference publicly accessible, this Court has often required that a person of ordinary skill in the art could locate it through a reasonably diligent search. *In re Lister*, 583 F.3d at 1314 ("We must also consider whether anyone would have been able to learn of its existence and potential relevance prior to the critical date.").

Zodiac advanced two witnesses, but neither had personal knowledge of the publication of the specific version of the Orange Binder submitted to the Board. Both witnesses explained that pages could be, and often had been, removed from the binder or replaced. Appx00028. Neither witness competently testified as to when, before the '838 patent's critical date, they somehow obtained or saw some version of the Orange Binder. Nor did they provide competent testimony regarding how or when they ultimately came to have a version of the binder. Appx00028-31. Without adequate explanation and evidence regarding when or how the witnesses came to have whatever version of the Orange Binder with which they claim some prior experience, there was no evidence that the specific copy of the Orange Binder submitted in the IPR, with its specific collection of pages, was ever accessible to a person of ordinary skill in the art, through a reasonably diligent search, prior to the critical date. As such, the Board's fact findings mandate a conclusion that Zodiac has not

met its burden. And, substantial evidence supports the Board's fact-findings on this issue.[12]

### B. Zodiac Ignores The Substantial Evidence On Which The Board's Decision Rests, Including Admissions From Zodiac's Own Witnesses That Contradicted Their Declarations

#### 1. Zodiac's Alleged Evidence Was Insufficient

Zodiac relies on the so-called Orange Binder—a thin, plastic, three-ring binder labeled McDonnell Douglas "*DC-10 Configuration Summary*" that collects a set of loose-leaf pages. Appx03593-95; Appx03597-600. The Orange Binder contains a collection of internal McDonnell Douglas ("MD") reference documents depicting interior configurations potentially available for installation in DC-10 airplanes. Appx01047-223; Appx03747-48, ¶ 78. There is no documentary evidence that this internal reference was published. For example, the reference was not catalogued in a library or widely distributed to the public.

In an attempt to elevate the Orange Binder to a printed publication, Zodiac submitted a declaration from Jarold Newkirk. Appx01283-1475. After that declaration was shown deficient, Petitioner supplemented with a new

---

[12] On pages 64-65 of its brief, Zodiac half-heartedly argues that the Orange Binder renders obvious the challenged claims. Zodiac is incorrect. Regardless, the Board never reached this issue since the Orange Binder is not prior art that can be used in an IPR. If this Court were to reverse the Board on the "printed publication" issue (it should not), the case would need to be remanded for the Board to consider the alleged obviousness of these 4 claims in the first instance.

declaration from John Schoenberg. Appx01521-27. But both declarants later admitted during deposition that (a) they had no foundation for most of their assertions, and (b) many of their statements provided speculation or personal beliefs regarding DC-10 customer configuration documents in general—not the specific Orange Binder submitted with Zodiac's IPR Petition, which is a collection of loose-leaf pages that may have differed from any other prior version. Appx00028.

For example, neither witness authored the binder. Appx03471, 37:11-13; Appx03480, 46:18-20; Appx03563, 43:5-7. Neither knows who or where it came from, how or when it was received, or the circumstances under which they came to have it. Appx03448-49, 14:22-15:25; Appx03453, 19:16-22; Appx03480, 46:8-17; Appx03541-43,  21:23-23:1; Appx03547, 27:6-19; Appx03553, 33:19-22; Appx03568, 48:8-49:2; Appx03579, 59:16-25. Neither has seen the contracts between MD and the various companies that supposedly received some versions of an Orange Binder, and hence neither can reliably state whether there were confidentiality obligations associated with it. Appx03465-69, 31:23-25, 34:13-35:2; Appx03544, 24:12-25; Appx03549-50 at 28:25-29:20; Appx03553, 33:11-13.

Both witness base their testimony about the binder's alleged publication date on the October 1978 revision date appearing on certain pages—not on any memory or actual publication information. Appx03477-80, 43:20-44:18, 45:10-

46:7; Appx03542-43, 22:23-23:2; Appx03547, 27:6-19; Appx03567, 47:15-21; Appx03579, 59:16-25. Such a revision date "does not suggest publication and/or presentation on that date. Rather, it suggests that the document was updated on that date and says nothing about dissemination of the document." CBM2013-00047, Paper 11 at 16 (P.T.A.B. Feb. 8, 2014); *see also Ex Parte Rasmussen*, Appeal No. 2011-007741, 2013 WL 3971698, at *3 (P.T.A.B. July 31, 2013) (finding an "04/2005" indication insufficient to establish publication date).

Mr. Schoenberg has only ever seen one copy of the binder—his own—and he has no basis to testify about MD's intent regarding the binder's confidentiality. Appx03550, 30:19-22; Appx03559, 39:4-19. Before the IPR, Mr. Schoenberg never showed his copy to anyone. Appx03566-67, 46:1-47:14. Neither witness could even confirm that the specific version of the binder purportedly available to them in the past, and the specific copies provided to them during cross examination, were the same as the version addressed in each paragraph of their declarations. Appx03448-49, 14:23-15:25; Appx03541-42, 21:16-22:5; Appx3597-3600. This, even though the witnesses had available during cross examination both the physical binder that Zodiac relies upon and the photocopies that Zodiac purportedly took from it and offered as evidence to the Board. *See, e.g.,* Appx03569-70, 49:3-50:1. Further, neither witness has a degree and hence they may not have had the requisite level of skill in the art

when (if ever) they saw the relevant binder pages. Appx03445, 11:4-12; Appx03529, 9:6-7; Appx03554-55, 34:12-35:2.

In short, the best the witnesses could muster is that (a) Mr. Schoenberg found <u>some</u> version of <u>some</u> Orange Binder in his files but he does not know when or how he received it and has never seen the contracts that might have limited its disclosure, (b) Mr. Newkirk believes that <u>some</u> version of <u>some</u> binder with similar contents at <u>some</u> point in the past might potentially have been made available to <u>some</u> (no one knows which) MD customers or potential customers—again pursuant to contracts Mr. Newkirk has never seen. Appx03563-65, 43:19-45:9; *cf. Samsung Elecs. Co., Ltd, v. Rembrandt Wireless Techs.*, IPR2014-00514, Paper 18 pp. 6-9 (P.T.A.B. Sept. 9, 2014) and Paper 20 (Oct. 24, 2014) (unadvertised, non-publicized dissemination to a select group insufficient to show public accessibility); *Ex Parte Rembrandt Gaming Techs.*, No. 2014-007853, 2014 WL 6847163, at *3 (P.T.A.B. Dec. 2, 2014) (a 1993 copyright date and conclusory statement of distribution to "customers and potential customers" of a product configuration guide insufficient to show requisite availability).

In addition, both Messrs. Newkirk and Schoenberg have been in Zodiac's employ for years, and both were admittedly paid for their testimony. Appx03443-48, 9:14-22, 10:6-8, 12:1-18, 13:5-14:4; Appx03530-39, 10:8-24, 15:15-9, 16:1-17:9, 18:15-19:7; *see also Bell'o Int'l. Corp. v. Whalen*

*Furniture Mfg, Inc.*, No. 2014-006677, 2014 WL 4925619, at *11 (Sept. 30,

2014) (finding declaration regarding prior publication unpersuasive in part

because declarant was an employee of the reexamination Requestor), *reversed*

*on other grounds by In re LF Centennial Ltd., No.* 2015-1931, 2016 WL

3545686 (Fed. Cir. June 29, 2016).

      The Newkirk and Schoenberg testimony is not competent to prove that

the <u>particular</u> binder depicted in Appx01047-223, with its <u>particular</u> loose-leaf

pages relied upon in the Petition, was publicly distributed to anyone before the

invention date. At best, the evidence shows that, prior to the 2014 IPR petition,

it somehow found its way to exactly one person—Petitioner's employee,

Schoenberg. *See Bell'o*, 2014 WL 4925619, at *11 (rejecting reference as

printed publication where the most that the reexamination Requestor had

shown was that it "bears the date '2006'" and one copy was given to

Requestor's employee witness). The Orange Binder thus fails to meet the legal

requirements to be a printed publication.

### 2. The Orange Binder Has No Indicia Of Publication

      The loose-leaf binder pages that Petitioner relies upon all bear an

October 1978 <u>revision</u> date. *See* Appx01189; Appx01191; Appx01197. The

binder bears no copyright date and no publication date. Different sections and

pages were revised over time. *See, e.g.*, Appx01045. Petitioner's particular

Orange Binder bears no indicia that at any time prior to the '838 patent it was

accessible or distributed to the "public" (let alone to someone of ordinary skill in the art) to an extent sufficient to qualify as a printed publication.

The Orange Binder is not a periodical or regular publication and hence yields no assumption that it had been published or made publicly known and available. Instead, it describes proprietary information regarding potential MD design options that typically would have been kept confidential, particularly if collected in this manner. Appx03719-20, ¶ 14, Appx03747-48, ¶ 78. The evidence suggests that a person of ordinary skill would have had considerable difficulty locating and obtaining any version of the Binder. First, according to Newkirk, such a person would already have had to be a customer or potential customer customizing a very particular commercial aircraft. Appx01284, ¶ 6. This means that the person probably would have had to be affiliated with a major airline. Second, the person would have had to get far enough into the purchase process that cabin customization was an issue. Appx03724-29, ¶¶ 24-39. Inevitably, the airline customer would have established a formal, confidential relationship with MD by that point. *Cf.* Appx03719-20, ¶ 14, Appx03724-29, ¶¶ 24-39, Appx03747-48, ¶ 78.

Newkirk asserted that MD distributed some (unknown) version of a binder "with no expectation of confidentiality and with no obligation of confidentiality on the part of [its] recipients." Appx01285, ¶ 11. That assertion is merely a personal opinion because Newkirk admits that he cannot testify on

MD's behalf. Appx03470, 36:7-16. Further, customers may have kept the binder confidential, even without a formal confidentiality obligation. *Cordis*, 561 F.3d at 1334; *In re Klopfenstein*, 380 F.3d 1345 (Fed. Cir. 2004).

Indeed, the Orange Binder's characteristics reflect that it was intended for internal reference by MD employees. For example, the binder's contact information references MD employees by only first initial and last name and provides only five digit phone extensions, not full phone numbers. *See, e.g.*, Appx01061 ("For additional information please contact N. C. Patterson on 35576."). Only internal MD personnel could decipher and use such incomplete contact information.

At any rate, there is no competent evidence that MD would have handed a copy of this particular Orange Binder to any diligent researcher who might ask. Nor does it seem likely that such a researcher could have obtained the Orange Binder from MD's customers. Appx03719-20, ¶ 14, Appx03747-48, ¶ 78. There is no reason to believe that MD customers exposed to the Orange Binder would further disseminate its contents and allow its contents to reach their competitors. Appx03726 ¶ 29; Appx03728, ¶ 36; Appx03734,¶ 52; Appx03747-48, ¶ 78. Even if MD itself supposedly did not label the binder as proprietary (one cannot tell since cover pages may have been substituted or removed from the binder by anyone over time) that does not mean that its customers treated it as public information. *Id.*

Even assuming that a researcher could have obtained a copy of the Orange Binder upon request, there is no evidence of how such a person would have become aware of its existence. Further, there is no evidence of how this person could have become aware that the relevant version of the cited Orange Binder pages was the one revised on October 1978.

Substantial evidence thus supports the Board's conclusion that Zodiac did not carry its burden to prove that the Orange Binder is a "Printed Publication."

## C. Each Of Zodiac's Alleged "Errors" Misses The Mark

Zodiac points to three alleged errors in the Board's conclusion. First, Zodiac alleges that "the Board imposed an improper burden for authentication." Opp. at 71. Second, Zodiac alleges that "the Board erred as a matter of law by requiring evidence establishing a specific date of publication." *Id.* And, third, Zodiac alleges that "the Board erred by discounting the Orange Book because of the format of the document." *Id.* Zodiac is mistaken on each point.

The Board did not "impose an improperly high standard for authentication in its analysis of the Orange Book." Opp. at 71. Indeed, the Board did not make a fact-finding about authentication under FRE 901 at all. Rather, the Board was justifiably concerned that Mr. Schoenberg's testimony "was not definitive of what was published and by when." Appx00029. This is

especially important because "the Orange Book is actually a three-ringed binder of loose-leaf pages that can be inserted and removed." Appx00028. So the issue the Board grappled with was not "authentication" (although that too would have been a sufficient basis to reject the purported Orange Binder as evidence). Rather, the declarations and testimony nowhere established that all of the loose-leaf pages in the Orange Binder presented in the IPR were actually the same as what was purportedly received by Mr. Schoenberg prior to the critical date.

On Zodiac's second point, the Board did not "require evidence establishing a specific date of publication." Opp. at 74. Instead, the Board sought evidence that the Orange Binder was published before the critical date of the '838 patent. The Board then expressly found that Zodiac was unable to muster such evidence: "It [Mr. Schoenbergs' testimony] does not establish that any Orange Book ever came into Mr. Schoenberg's possession prior to the critical date of the '838 patent." Appx00029. Indeed, the most Zodiac presented was "'probably' and 'perhaps.'" Appx00030. Mr. Schoenberg testified that he had the Orange Binder before he retired in 1997, "[b]ut this testimony does not establish how the Orange Book came into his possession." Appx00030. Without explaining the "how" of the alleged publication, there was no competent evidence of publication on any date before the critical date.

On Zodiac's last point, the Board did not "discount[] the Orange Book because of the format of the document." Opp. at 71. Rather, the Board found that loose-leaf pages could easily be "inserted and removed" from the binder. Appx00028. Because of this, the Board sought facts proving that the version at issue in the IPR was actually the same as the version that was allegedly published. Zodiac failed to persuasively provide such facts, and was unable to show that the binder, including the specific pages at issue, was actually what was even allegedly available to the public. In fact, the Board specifically found that Mr. Schoenberg's testimony was not sufficiently credible on this issue: "[W]e are not persuaded that Mr. Schoenberg's testimony regarding the Orange Book relates specifically to the version of the Orange Book on which the Petitioner relies." Appx00030. This sort of credibility determination is committed to the sound discretion of the finder of fact. *Gen. Elec. Co. v. Wilkins*, 750 F.3d 1324, 1329 (Fed. Cir. 2014) ("Credibility determinations are entitled to strong deference."); *Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010) ("We defer to the Board's findings concerning the credibility of expert witnesses."). The Board's conclusion did not depend merely on the three-ring binder "format" of the Orange Binder. Rather, in addition to all the other problems with Zodiac's evidence, the inescapable fact is that the Orange Binder's contents were easy for anyone to change at any time. Beyond that, the Board found substantial evidentiary uncertainty as to whether and when any of

its contents were ever published and found the proffered witness testimony, from Zodiac's own employees, to be non-persuasive, non-definitive, and inconsistent. The Board was right—Zodiac failed to meets it burden.

## VIII. CONCLUSION ON CROSS APPEAL

Zodiac failed to carry its burden with respect to the Orange Binder. As such, the Board correctly concluded that "Petitioner has not shown by a preponderance that claims 8, 20, 30, and 38 are unpatentable as obvious in view of Betts and the Orange Book." Appx00031. This Court should affirm that aspect of the Final Written Decision.

Dated: November 10, 2016

*/s/ Benjamin Haber*
Benjamin Haber

Irell & Manella, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles CA, 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
bhaber@irell.com

*Counsel for:*

*Appellant/Patent Owner*
*B/E Aerospace, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on   November 10, 2016
by:

       ☐ U.S. Mail

       ☐ Fax

       ☐ Hand

       ☒ Electronic Means (by E-mail or CM/ECF)

| Benjamin Haber | /s/ Benjamin Haber |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Irell & Manella LLP |
| Address | 1800 Avenue of the Stars |
| City, State, Zip | Los Angeles, CA, 90067 |
| Telephone Number | 310-203-7934 |
| Fax Number | 310-203-7199 |
| E-Mail Address | bhaber@irell.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.   This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☒  This brief contains *[state the number of]* 13,332 _____ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐   This brief uses a monospaced typeface and contains *[state the number of]* _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.   This brief complies with the or typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☐   This brief has been prepared in a proportionally spaced typeface using

*[state name and version of word processing program ]* _____ in

*[state font size and name of type style ]* _____ , or

☐   This brief has been prepared in a monospaced typeface using

*[state name and version of word processing program ]* _____ with

*[state number of characters per inch and name of type style]* _____ .

/s/ Benjamin Haber
_____

(Signature of Attorney)

Benjamin Haber
_____

(Name of Attorney)

_____

(State whether representing appellant, appellee, etc.)

_____

(Date)

Reset Fields